**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION**

| | |
|---|---|
| SMITH & FONG COMPANY,<br>   Plaintiff,<br><br>  v.<br><br>idX CORPORATION, Individually and as Successor in Interest to idX Dayton, LLC; and DOES 1 through 10, inclusive,<br><br>   Defendants. | Case No.:  3:22-cv-00042-TMR-CHG<br><br>Judge:   Hon. Thomas Rose<br>Mag. Judge:  Hon. Caroline Gentry |

**AGREED ORDER ESTABLISHING PROTOCOL FOR PRODUCTION OF
ELECTRONICALLY STORED INFORMATION**

This matter has been brought before the Court by the parties in the above-captioned litigation. The parties through counsel have agreed to the form and entry of this Order ("ESI Order") establishing a protocol for the production of Electronically Stored Information ("ESI") in this matter. Accordingly, good cause appearing, it is hereby ORDERED as follows:

**I. SCOPE**

  **A.** "Electronically Stored Information" or "ESI" has its broadest possible meaning consistent with Fed. R. Civ. P. 34(a) and Fed. R. Evid. 1001.

  **B.** "Litigation" means the above-captioned case pending in the United States District Court for the Southern District of Ohio.

  **C.** "Party" or "Parties" means Plaintiff Smith & Fong Company and Defendant idX Corporation.

  **D.** "Requesting Party" means the party requesting the discovery and "Producing Party" means the party making the production.

  **E.** The procedures and protocols outlined herein govern the production of ESI by a

party during the pendency of this Litigation. Any practice or procedure set forth herein may be varied by written agreement of the Parties. Nothing in this ESI Order may be superseded by discovery requests or definitions, absent written agreement of the Parties.

**F.** Nothing in this ESI Order establishes any agreement as to either the temporal or subject matter scope of discovery in the Litigation. Nothing in this ESI Order creates an obligation by any party to produce ESI on back-up tapes or other long-term storage media that were created strictly for use as a data back-up medium.

**G.** No Party shall be obligated under this ESI Order to produce any ESI that is no longer within its possession, custody or control (*i.e.*, inaccessible, lost or deleted) as a result of the good-faith operation of an electronic information system or document retention policy, unless the Requesting Party establishes that the Producing Party's decisions concerning the ESI lacked a good faith basis and were not reasonably related to the Producing Party's legitimate business interests. The Parties further stipulate to rely on *The Sedona Conference, Commentary on Rule 34 and Rule 45 "Possession, Custody, or Control,"* 17 Sedona Conf. J. 467 (2016), attached as Appendix A hereto, to guide any meet and confer process regarding custody, control, or possession of ESI.

**H.** Notwithstanding anything to the contrary herein, absent a showing of good cause by the Requesting Party, the following ESI need not be preserved and is not discoverable because they are not reasonably accessible due to undue burden or cost pursuant to Fed. R. Civ. P. 26(b)(2)(B):

    **1.** Electronic data (e.g., email, calendars, contact data, notes, voice mail, text messages) sent to or from mobile devices (e.g., iPhone, iPad, Android, and Blackberry devices), provided that a copy of all such electronic data is routinely saved elsewhere (such as on a server, laptop, desktop computer, or "cloud" storage).

    **2.** On-line access data such as temporary internet files, history, cache, cookies, and the like.

    **3.**  Back-up tapes or other long-term storage media that were created strictly for use as a data back-up medium and which are substantially duplicative of data that are more accessible elsewhere.

    **4.**  Temporary data stored in a computer's random access memory or RAM.

    **5.**  Deleted, slack, fragmented, or other data only accessible through forensics.

    **6.**  Server, system, or network log files.

  **I.**  Absent a showing of good cause by the requesting party, the parties shall not be required to modify, on a going-forward basis, the procedures used by them in the ordinary course of business to back up and archive data; provided, however, that the parties shall preserve all discoverable ESI in their possession, custody or control.

  **J.**  The Parties shall meet and confer to resolve any disputes that arise under this ESI Order. The Parties shall conduct discovery in a cooperative manner, including for example by reasonably drafting discovery requests and responses in accordance with Fed R. Civ. P. 1 and 26(g)(l), by producing ESI in accordance with Fed R. Civ. P. 34, and by meeting and conferring in good faith on topics such as the identification of custodians of relevant ESI, potentially relevant data sources, search methodologies, and such other issues as may arise during the course of discovery.  In the event the Parties cannot reach agreement on a disputed matter, a Party may submit the matter to the Court.

**II.**  **IDENTIFICATION OF RESPONSIVE ESI.**

  **A.**  Documents and ESI which are neither privileged nor otherwise protected shall be timely reviewed and produced in accordance with the Federal Rules of Civil Procedure, the Federal Rules of Evidence, Local Rules of the United States District Court for the Southern District of Ohio, or other applicable law, rule or order, and this ESI Order. After receiving requests for production of documents, the Producing Party shall conduct a reasonable and good faith search for responsive ESI.

  **B.** Absent a further order of the Court, a Producing Party shall not have an obligation to search or produce from sources of ESI that it in good faith identifies as not reasonably accessible because of undue burden or cost in accordance with Fed. R. Civ. P. 26(b)(2)(B).

  **C.** On-site inspection of electronic media shall not be permitted absent a demonstration by the requesting party of specific need and good cause or by agreement of the parties.

  **D.** **Date Range.** Subject to Sec. I(F) above, the preliminary date range for searching any sources of ESI is January 1, 2018 to the present.

  **E.** **System Files.** Common system and program files as defined by the NIST library (which is commonly used by discovery vendors to exclude system and program files from document review and production) need not be processed, reviewed or produced. The parties shall meet and confer on any additional file types that also need not be processed, reviewed, or produced.

### III. PRODUCTION OF ESI

  **A.** **General Document Production Format**. The following provisions shall generally govern the production format and procedure for ESI other than databases or spreadsheets.

    **1.** **Native Files:** Files that are not easily converted into an image format should be produced in native format, including spreadsheet and database files (including project management software,) design and graphics files such as computer assisted design (CAD), computer assisted manufacturing (CAM), and computer numeric control (CNC) files.

    **2.** **ESI Production Format:** All ESI, other than those file types identified in Sec. III(A)(1), shall be produced as single- or multi-page TIFF or PDF image files, such image files to be of not less than 300 dpi resolution. The documents shall also be processed through Optical Character Recognition (OCR) Software with OCR text files provided along with the production. Extracted Text shall be provided for all documents unless it cannot be obtained. To

the extent a document is redacted, OCR text files for such document shall not contain text for the redacted portions of the document. The Producing Party shall also provide a data load file ("Data Load File") corresponding to the image files and the full text files that shall contain the requested metadata as defined below. Data Load Files will be provided in the format requested by each Party. In the event a party determines that it is unable to produce in the format specified in this section without incurring unreasonable expense, the parties shall meet and confer to agree upon an alternative format for production.

   **3.**  **Metadata.** During the process of converting ESI from the electronic format of the application in which the ESI is normally created, viewed and/or modified to, metadata values should be extracted and produced in a load file.

To the extent they are reasonably available, the metadata values that are to be extracted and produced in the load files are:

<u>Metadata from Email</u>:
 Email Subject
 Email Author
 Email Recipient
 Email CC
 Email BCC
 Email Received Date
 Email Sent Date

<u>Metadata from Electronic Files</u>:
 File Name
 File Author
 File Created Date
 File Modified Date
 File Extension

<u>Metadata for both Email and Electronic Files</u>:
 Custodian[1]
 Original Path

---

[1] Custodian metadata shall in good faith identify from whom or where each document was collected for production in this action, e.g., an individual, a document repository, or a third party. Merely identifying the producing party as the custodian generally fails to satisfy this requirement.

MD5 Hash

To the extent reasonably available, the "Custodian" or "Original Path" field with respect to ESI gathered from an individual's hard drive will provide metadata sufficient to identify the custodian from whose hard drive such ESI has been gathered.

By agreeing to produce specific categories of metadata that are reasonably available, no party is representing that any particular category of metadata exists or is reasonably available.

For all documents that contain an attachment (for example, email,) to the extent reasonably available, the following fields should be produced as part of the metadata load file to provide the parent/child or parent/sibling relationship. Field names should not exceed nine consecutive characters and there should not be spaces between those characters.

Production Number Begin
Production Number End
Begattach_num
Endattach_num
Attachment Name
Production Doc Page Count
Confidentiality Designation

4. **Appearance.** Each document's electronic image shall convey the same information and image as the original document except for redactions for any privilege or for the confidential or identifying information of a borrower other than the named Plaintiff in this case. Documents shall appear with any revisions and/or comments visible and printed. Documents that present imaging or formatting problems shall be promptly identified and the parties shall meet and confer in an attempt to resolve the problems.

5. **Document Numbering for Images:** Each page of a document produced as an image will be assigned a Bates number that: (1) is unique across the entire document production; (2) maintains a constant length across the entire production padded to the same number of digits,

but no less than six (6) digits; (3) contains no special characters or embedded spaces; and (4) is sequential within a given document. If a Bates number or set of Bates numbers is skipped in a production, the Producing Party will so note in a cover letter or production log accompanying the production. Each image file shall be named with the Bates Number corresponding to the number assigned to the document page contained in that image. The Document Number for each document shall be created so as to identify the Producing Party and the Document Number (*e.g.*, "ABC000000"). Each Party shall use a unique identifying prefix derived from or related to its name.

  **6.**   **Unitization.** If a document is more than one page, the unitization of the document and any attachments and/or affixed notes shall be maintained as it existed in the original file of the Producing Party or shall be documented in a Data Load File or otherwise electronically tracked.

  **7.**   **Color.** Documents containing color shall be produced in the manner in which they are kept in the ordinary course of business.

  **8.**   **Exception Files**. Files that cannot be produced or imaged due to technical difficulties shall be identified as exception files and identified on a log listing the file's name, custodian, and reason for the exception. Common exception files include, without limitation, corruption, password protection, digital rights management, or proprietary software associated to the file.

 **B.**   **Production Format For Information From Native Files**. The following provisions shall generally govern the production format and procedure for native files under Sec. III.A.1. :

  **1.**   **CAD/CAM/CNC Files and Spreadsheets.** Absent special circumstances,

Excel files, .csv files and other similar spreadsheet files, as well as CAD/CAM/CNC files will be produced in native format ("Native Files"). Native Files will be provided in a self-identified "Natives" directory. Each Native File will be produced with a corresponding single-page placeholder image, which will contain language indicating that the document is being produced as a Native File. Native Files will be named with the beginning Bates number that is assigned to that specific record in the production. A "Native Link" entry for each spreadsheet will be included in the load file indicating the relative file path to each native file on the Production Media. Native Files will be produced with extracted text and applicable metadata fields if possible and consistent with Section III.A.2 above. For documents that contain redacted text, the parties may either apply the redactions directly on the native file itself or produce image files with burned-in redactions in lieu of a Native File and placeholder image. Each Producing Party will make reasonable efforts to ensure that Native Files, prior to conversion to .PDF, reveal hidden data from redacted Native Files that are produced as image files and will be formatted so as to be readable. (For example, column widths should be formatted so that numbers do not appear as "#########".) Under these circumstances, all single-page images shall include row and column headings.

        2.        **Databases.** If responding to a discovery request requires production of ESI contained in a database, the Producing Party at its option may provide the database as a Native File pursuant to Section III.B.1 above, or may comply with the discovery request by querying the database for discoverable information and generating a report in a reasonably usable and exportable electronic format (for example, in Excel or .csv format). Extracts from non-standalone databases, (e.g., financial databases,) shall be produced natively, or where possible as Microsoft Excel files or Microsoft Access files. The first line of each such file will, to the extent possible, show the column headers for each field of data included. The parties shall meet and confer as

needed to finalize the appropriate data extraction and production format for specific information contained in particular databases.

        **3.**    **Requests for Other Native Files.** Other than as specifically set forth above, a Producing Party need not produce documents in native format. If good cause exists for the Requesting Party to request production of certain ESI in native format, the Requesting Party may request production in native format by providing (1) a list of the Bates numbers of documents it requests to be produced in native format; and (2) an explanation of the need for reviewing such documents in native format. The Producing Party shall not unreasonably deny such requests if the Requesting Party has demonstrated good cause for receiving the ESI in native format. Each file produced in response to such requests will be produced to the extent possible consistent with Section III.B.1 above.

    **C.**    **Production Media.** The Producing Party shall produce documents on CD-ROM, DVD, external hard drive (with standard PC compatible interface), or such other readily accessible computer or electronic media as the parties may hereafter agree upon (the "Production Media"). Alternatively, the Producing Party may produce documents through a secure electronic file transfer system. Each piece of Production Media shall be labeled with (1) the party making the production, (2) the date of the production, (3) text referencing that it was produced in *Smith & Fong v. idX Corp. et al.*; (4) the Bates Number range of the materials contained on the Production Media; and (5) any confidentiality designation(s) consistent with the terms of the Protective Order entered in this matter. To maximize the security of information in transit, any Production Media may be encrypted by the Producing Party. In such cases, the Producing Party shall transmit the encryption key or password to the Requesting Party, under separate cover, contemporaneously with sending the encrypted media.

**D.      Duplicate Production Not Required.** ESI files need only be produced once. The Producing Party will apply global deduplication to responsive ESI based on MD5 Hash values or an equivalent deduplication key. Email will be deduplicated by family, not on an individual basis. Additionally, to the extent reasonably accessible, all custodians of removed duplicates will be listed in an "All Custodians" field and identified by full name of the individual or departmental custodian. Stand-alone documents may be deduplicated against email attachments provided that the email attachment is the duplicate that is produced and the custodian(s) of the removed duplicate(s) are entered into the All Custodian field. All natives, even deduplicated versions, will be retained in a format readily accessible to be produced upon request.

**E.      Privilege Logs.** A party withholding documents based on one or more claims of privilege will produce a privilege log. There will be no obligation to produce privilege logs identifying attorney-client communications concerning case strategy or the course of litigation that occur following the commencement of this lawsuit, including the efforts to locate and collect documents and ESI in response to a discovery request in this matter.

## IV.     MISCELLANEOUS PROVISIONS

**A.**      If the forms of production allowed by this protocol present an undue burden or cost for a Producing Party, the parties shall meet and confer to agree on a reasonable, alternative form of production. Any party may file a motion with the Court to seek individual relief from this ESI Order.

**B.**      Each party will presumptively bear its own costs of production. However, the parties reserve the right to seek cost shifting as appropriate.

**C.**      Nothing in this ESI Order shall be construed to affect the discoverability or admissibility of any document or data. All objections to the discoverability or admissibility of any

document or data are preserved and may be asserted at the appropriate time.

      **D.**      The parties may agree to modify or waive the terms of this ESI Order in writing signed by counsel for the affected parties.

IT IS SO ORDERED.

July 8, 2022                                     *s/Caroline H. Gentry*
                                                     Caroline H. Gentry
                                                     United States Magistrate Judge

                                                     Respectfully submitted,

|  |  |
|---|---|
|  | *s/ G. Thomas Williams* |
| *s/ Omid Mantashi* | *by s/ Omid Mantashi per email authorization* |
|  |  |
| Jonathan Daugherty (Ohio Reg. – 0097508) | Jeremy S. Young (0082179) |
| jon@jdcincylaw.com | jyoung@ralaw.com |
| Daugherty Law Office LLC | Roetzel & Andress |
| 182 Barnwood Drive | 41 South High Street |
| Edgewood, KY 41017 | Huntington Center, 21st Floor |
| Phone: (859) 331-5500 | Columbus, OH 43215 |
| Facsimile: (859) 331-2519 | Phone: (614) 463-9770 |
|  | Fax: (614) 463-9792 |
| Omid Mantashi (*Proc Hac Vice*) |  |
| Law Office of Omid Mantashi | G. Thomas Williams (MI-P53734) |
| omid@ipfoundry.com | gtw@mcgarrybair.com |
| 360 Grand Avenue, Ste. 90 | McGarry Bair PC |
| Oakland, CA 94610 | 45 Ottawa Ave. SW, Suite 700 |
| Phone: (510) 593-9442) | Grand Rapids, MI 49503 |
| Facsimile: (510) 868-8310 | Phone: (616) 742-3500 |
|  | Fax: (616) 742-1010 |
|  |  |
| **ATTORNEYS FOR PLAINTIFF** | **ATTORNEYS FOR DEFENDANT** |
| **SMITH & FONG COMPANY** | **idX CORPORATION** |

Appendix A



*The Sedona Conference*
*Commentary on Rule 34 and Rule 45*
*"Possession, Custody, or Control"*
(July 2016)

Rule 34 and Rule 45 of the Federal Rules of Civil Procedure obligate a party responding to a document request or subpoena to produce "documents, electronically stored information, and tangible things" in that party's "possession, custody, or control." However, the Rules are silent on what "possession, custody, or control" means, and the case law is unclear and inconsistent. This inconsistency often leads to sanctions for unintended and uncontrollable circumstances. This Commentary is intended to provide practical, uniform and defensible guidelines regarding when a responding party should be deemed to have "possession, custody, or control" of documents and electronically stored information.

This Commentary introduces and explains five practical "Principles on Possession, Custody, or Control":

Principle 1.  A responding party will be deemed to be in Rule 34 or Rule 45 "possession, custody, or control" of Documents and ESI when that party has actual possession or the legal right to obtain and produce the Documents and ESI on demand.

Principle 2.  The party opposing the preservation or production of specifically requested Documents and ESI claimed to be outside its control, generally bears the burden of proving that it does not have actual possession or the legal right to obtain the requested Documents and ESI.

Principle 3(a).  When a challenge is raised about whether a responding party has Rule 34 or Rule 45 "possession, custody, or control" over Documents and ESI, the Court should apply modified "business judgment rule" factors that, if met, would allow certain, rebuttable presumptions in favor of the responding party.

Principle 3(b).  In order to overcome the presumptions of the modified business judgment rule, the requesting party bears the burden to show that the responding party's decisions concerning the location, format, media, hosting, and access to Documents and ESI lacked a good faith basis and were not reasonably related to the responding party's legitimate business interests.

Principle 4.  Rule 34 and Rule 45 notions of "possession, custody, or control" should never be construed to override conflicting state or federal privacy or other statutory obligations, including foreign data protection laws.

Principle 5.  If a party responding to a specifically tailored request for Documents or ESI (either prior to or during litigation) does not have actual possession or the





> legal right to obtain the Documents or ESI that are specifically requested by their adversary because they are in the "possession, custody, or control" of a third party, it should, in a reasonably timely manner, so notify the requesting party to enable the requesting party to obtain the Documents or ESI from the third party. If the responding party so notifies the requesting party, absent extraordinary circumstances, the responding party should not be sanctioned or otherwise held liable for the third party's failure to preserve the Documents or ESI.

This Commentary reflects the culmination of over three years of dialogue, review, public comment, and revision, and incorporates the collective expertise of a diverse group of lawyers and representatives of firms providing consulting and legal services to both requesting and responding parties in civil litigation.

The full text of *The Sedona Conference Commentary on Rule 34 and Rule 45 "Possession, Custody, or Control,"* July 2016, is available free for individual download from The Sedona Conference website at
https://thesedonaconference.org/publication/Commentary_on_Rule_34_and_Rule_45_Possession_Custody_or_Control.

© 2016 The Sedona Conference. Reprinted courtesy of The Sedona Conference.

